GORDON, D. B. A. DAVID GORDON BUILDING & CONSTRUCTION CO., *v.* WEBER ET AL., D. B. A. AL BECKER SONS CO.

(Decided January 16, 1928.)

*Messrs. Dolle, O'Donnell, Geisler & Cash,* for plaintiff in error.

*Messrs. De Camp, Sutphin & Brumleve,* for defendant in error John C. Weber.

*Mr. L. G. Hilpp,* for defendants in error John A. Becker and F. Wm. Becker.

CUSHING, J.    John C. Weber brought an action against David Gordon and the Beckers for damages for injuries claimed to have been caused by their negligence.

Gordon had entered into a written contract with the United States government to "furnish all the labor and material, and do and perform all the work required for the construction of new mezzanine floors, etc., including mechanical equipment, interior lighting fixtures, incidental changes and ad-

justments in connecting work of the present build-
ing, but not including painting walls, painting of
wall plaster, in the custom house and post office,
Cincinnati, Ohio.''

This contract provided that the several govern-
mental departments using the building should remain
open to the public and continue to function. The
Beckers had contracted with Gordon to do certain
electrical work required by Gordon's contract, in-
cluding the placing of electric conduits, wires, and
outlets. The installation of these conduits, wires,
and outlets had been practically completed in other
parts of the building, when, on April 18, 1926, Gor-
don ordered the Beckers to proceed with the work on
the mezzanine in the money order division of the
post office. In compliance with Gordon's directions,
a foreman and a workman of Becker's went to that
location the next day to do the work required. Here,
as in the mezzanine previously constructed by Gor-
don, the specifications required that the conduits
which ran along the ceiling should be in close contact
with the under edges of the joists, so as to be wholly
concealed by the finished plastering.

The workman was engaged in placing a conduit
under the joists, and, in the performance of this
work, was working from below, standing on a step-
ladder. Weber, plaintiff below, having entered the
money order division to procure a money order, was
at one of the wall desks provided for customers, and
was engaged in filling out an application for a money
order, when the ladder and the workman both fell
on the desk, causing the desk, together with the
added weight of the workman, to fall in such a man-
ner as to seriously injure Weber's foot and ankle.

Each of the defendants, by answer denied negligence.

The verdict was against both Gordon and the Beckers. Judgment was entered on the verdict, and Gordon has filed his petition in error to reverse that judgment. The Beckers have filed a cross-petition in error.

The questions for consideration by the jury were: Was Gordon guilty of negligence? Were the Beckers guilty of negligence? and What was the proximate cause of Weber's injury?

Gordon constructed the mezzanine floor, using joists about 14 feet long and 12 inches wide and 2 inches thick. In his work in other parts of the building, he toe-nailed each end of each joist at its lower edge to the scantling that was bolted to the lower flange of the eyebeam at that end of the joist, and he braced the joists with a row of cross-bridging, nailed in place, midway of the length of the joists—all for the purpose of holding the joists firmly in place. But in the money order division, while most of the joists were bridged at the time of the accident, at least two of the joists were neither toe-nailed nor bridged, although some of the floor boards had been either piled or laid over the joists.

Becker's employee, in laying the conduit, placed the stepladder on the floor and ascended to the second or third step. Finding that the conduit was not in contact with all the joists, he used a hickey, or bender, placing it against the lower edge of one of the joists as a fulcrum, for the purpose of bending the conduit at that point. Upon the exertion of force on the bender, the joist gave way, and the workman and his ladder fell, causing the injuries complained of.

There is evidence that the joist which gave way was neither toe-nailed nor bridged.

Gordon contends that the negligence of Becker's workman caused the injuries to Weber.

The Beckers introduced testimony that it is proper practice and a recognized custom among electricians to use joists for leverage purposes for bending conduits in doing the kind of construction work that the Becker workmen were doing in this instance, and that such practice and custom were well known to Gordon. They contend that Becker's workmen had the right to so use the joist in question, without ascertaining whether it was firmly secured in place, and that Gordon's failure to so brace and nail, or to notify the Beckers of his failure to so brace and nail, was the proximate cause of the injury to Weber.

The trial court, in his charge, submitted to the jury the question:

"Was the injury caused by the negligence of the defendant the Gordon Construction Company, or was the injury caused by the negligence of the Becker Sons' Company, or by the combined negligence of both these companies?"

In another part of his charge, the court uses the language:

"What was the cause of the injury to Weber? Was it because the joist was not fastened, or was it because the ladder was not properly situated and protected, or was it because of the negligence of the electrician in handling his instrument in placing the pipe, or was it because of the combined negligence of both the Gordon Construction Company and the Becker Company?"

The jury found a general verdict against the defendants Gordon and the Beckers.

Gordon constructed the carpentry; there is evidence that, when he directed Becker to proceed with his work, he knew that it was the custom among electrical workers to use a hickey against the joists for the purpose of bending conduits in the manner followed by the workmen in this case. There was evidence from which the jury might conclude that Gordon was negligent. There was also evidence from which the jury might conclude that Becker's men were negligent in the manner in which they used the ladder and the tool.

In the case of *Keifer* v. *Cleveland Ry. Co.*, 8 Ohio App., 272, it was held that, where concurrent causes are the immediate and efficient cause of an injury, it is not competent to take one of them away from the other, and say that it and not the other was the proximate cause of the accident.

The question was properly submitted to the jury as to whether it was the negligence of the Gordon Construction Company or of the Becker Company, or the combined or concurrent acts of both, that caused the injury.

Finding no prejudicial error in the record, the judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

MILLS, J., concurs.

HAMILTON, P. J., dissenting as to the judgment against Gordon. I am of the opinion that the evidence in this case fails to show negligence on the

part of Gordon, proximately contributing to the injury of the defendant in error, Weber.

There was no liability on the part of Gordon under the rule of *respondeat superior*.

I do not think that Gordon was bound to anticipate that the joist was to be used as a fulcrum for prying. Joists are for the support of a floor and other purposes going to the whole construction of the building. If he was bound to anticipate that the joist was to be used as a fulcrum for prying, what force would he be expected to anticipate? And, since any liability on the part of Gordon must be based on this proposition, and being of the opinion that he was not bound to anticipate such use of the joists, I dissent as to the judgment against Gordon.

In any view of the case, the negligence of Becker was an intervening cause, and any negligence on the part of Gordon was not a proximate cause.